UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DANIEL KHOSHABA,

                    Plaintiff,

v.                                          Civil No. 2:24cv237

JOSEPH D. STILWELL, et al.,

                    Defendants.


<u>MEMORANDUM OPINION</u>

       This matter is before the Court on the parties' Joint Motion for Preliminary Approval of Class Action Settlement (the "Joint Motion"), filed on October 21, 2025.  ECF No. 92.  The Court held a hearing on the motion on November 12, 2025.  <u>See</u> ECF No. 97. For the reasons explained herein, the Court now **GRANTS** the Joint Motion, certifies the proposed class for settlement purposes, and preliminarily approves the proposed settlement.

## I. BACKGROUND

       Daniel Khoshaba ("Plaintiff") is the former chief executive of Wheeler Real Estate Investment Trust, Inc. ("Wheeler"), a Maryland corporation.  Plaintiff filed suit on April 10, 2024, against various individuals involved in Wheeler's management (the "Individual Defendants") and various funds controlled by one of the Individual Defendants, Joseph D. Stilwell (the "Stilwell Fund Defendants" and, together with the Individual Defendants,

"Defendants"). ECF No. 1. The Court discussed Plaintiff's allegations at length in its Opinion and Order disposing of Defendants' motions to dismiss. ECF No. 40. Here, a brief summary will suffice.

In July 2021, Wheeler offered its common stockholders rights to purchase interest-bearing "Notes" convertible at the holder's election to shares of Wheeler's common stock. Id. at 6-7. The regulatory prospectus filed in connection with this "Rights Offering" suggested the goal was to raise funds for the repurchase of shares of "Series D Preferred Stock" in order to mitigate the "significant risk that [Wheeler] w[ould] not have sufficient cash to pay the aggregate [Series D] redemption price, and would not be able to meet [its] redemption obligation without liquidating assets and/or substantial dilution of [its] Common Stock."[1] Id. at 8 (citation omitted).

That risk heightened as September 21, 2023 - the Series D "Redemption Date" - approached. Id. at 4. Starting that day, holders of Series D Preferred Stock could choose to redeem the accrued value of their Series D shares for either cash or common stock. Id. Redemption of at least 100,000 Series D shares would trigger a substantial discount on the conversion rate of Notes to common stock, benefiting the Noteholders. Id. at 7.

---

[1] In 2019, Mr. Stilwell allegedly described this as a potential "Death Spiral" that could "dilut[e] existing common stockholders and even potentially wip[e] out existing common stockholders." ECF No. 1 ¶ 37.

Plaintiff contends that Wheeler, under Defendants' management, should have repurchased all or nearly all outstanding Series D shares prior to the Redemption Date in order to avoid discounted Note conversion. See id. at 11. Instead, the number of Series D shares eligible for redemption increased when Wheeler paid interest on the Notes in Series D shares, rather than in Series B shares or cash. Id. at 10. This occurred, in Plaintiff's view, not with any business justification but instead so that certain Defendants, who had purchased the vast majority of the convertible Notes, see id. at 8-9, "could profit from the discounted conversion rates on their Notes after the Redemption Date," id. at 11 (citation omitted). Plaintiff claims this was a breach of fiduciary duty. See id. at 12, 17.

Following the Redemption Date, more than 100,000 shares of Series D stock were redeemed, triggering the discount on the Notes' conversion price. Id. at 15. While the Noteholders benefited, common stockholders allegedly "suffered severe dilution." Id. at 15-16 (citation omitted).

## II. PROCEDURAL HISTORY

Plaintiff filed a "shareholder derivative and direct class action" on April 10, 2024, ECF No. 1 ¶ 1, demanding a jury trial and seeking relief, including money damages, personally and on behalf of a putative class of common stockholders, id. at 41-42; see ECF No. 40, at 17-18. Defendants filed motions to dismiss the

3

complaint on June 10, 2024.   ECF Nos. 23, 24, 26.   On September 13, 2024, this Court dismissed Plaintiff's derivative and unjust enrichment claims with prejudice but declined to dismiss Plaintiff's direct claims challenging the Individual Defendants' alleged breaches of fiduciary duties and the Stilwell Fund Defendants' aiding and abetting thereof.   ECF No. 40, at 83-84.

Discovery ensued.   See ECF No. 93, at 12.   On July 10, 2025, Plaintiff sought certification of a shareholder class, ECF Nos. 68, 69, which Defendants opposed, ECF No. 81.   A settlement conference was scheduled to take place before Magistrate Judge Douglas E. Miller on August 22, 2025.   ECF No. 64.   But "on August 20, 2025, the same day they submitted memoranda to Magistrate Judge Miller in advance of the settlement conference, the Settling Parties reached a settlement-in-principle."   ECF No. 93, at 13; see ECF No. 90 (notice of settlement).   Pursuant to the Stipulation of Settlement, Defendants would pay $7.125 million in exchange for the release of all claims "that were or could have been alleged or asserted by Plaintiff in the Litigation."   See ECF No. 94-1, at 9-10.   The proposed settlement "Class" includes "all Persons who (i) held Wheeler common stock as of August 16, 2021 or (ii) purchased Wheeler common stock between August 16, 2021 and September 20, 2023, inclusive."[2]   ECF No. 94-1, at 6.

---

[2] "Excluded from the [proposed] Class are (i) Defendants, members of their immediate families, and the legal representatives, heirs, successors, or assigns of any of the foregoing; (ii) any entity in which Defendants have

4

The parties now seek an order "(1) granting preliminary approval of the proposed Settlement; (2) certifying the Class for settlement purposes; (3) appointing Plaintiff as Class Representative and Rolnick Kramer Sadighi LLP as Class Counsel; (4) approving the form and manner of notice of the proposed Settlement to the Class, including by appointing Verita Global, LLC as the Claims Administrator; and (5) setting a hearing date for final approval of the proposed Settlement and a schedule for various deadlines relevant thereto." ECF No. 92, at 1-2.

### III. STANDARD FOR PRELIMINARY SETTLEMENT APPROVAL

Federal Rule of Civil Procedure 23(e) permits "[t]he claims, issues, or defenses of . . . a class proposed to be certified for purposes of settlement" to "be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir. 1991). To that end, a court reviewing a proposed class-action settlement "acts as a fiduciary for the class." 1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co. (Allen Trust), 28 F.4th 513,

---

or had a controlling interest at any time on or after August 16, 2021; and (iii) any Person who would otherwise be a Class Member but who validly and timely requests exclusion in accordance with the requirements set by the Court in connection with the Settlement." ECF No. 94-1, at 6.

525 (4th Cir. 2022) (quoting <u>In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.</u>, 952 F.3d 471, 483 (4th Cir. 2020)).

At the preliminary approval stage, the parties "must provide the court with information sufficient to enable it to determine whether to give notice of the [settlement] proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). "The court <u>must</u> direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

To determine the likelihood of <u>settlement approval</u> under Rule 23(e)(1)(B)(<u>i</u>), the Court considers whether the proposal's terms are "within the range of possible approval." <u>Goodlaxson v. Mayor of Baltimore</u>, 776 F. Supp. 3d 311, 319 (D. Md. 2025) (citation omitted). Similarly, to determine the likelihood of <u>class certification</u> under Rule 23(e)(1)(B)(<u>ii</u>), the Court must make "a preliminary determination" that the Rule 23 class certification requirements are satisfied. <u>Id.</u> (citation omitted); <u>see also Solomon v. Am. Web Loan, Inc</u>, No. 4:17cv145, 2020 WL 3490606, at *2 (E.D. Va. June 26, 2020) ("Certification of a settlement-only class, like that of a litigation class, is required to satisfy the requirements established in Rule 23.").

6

## IV. ANALYSIS

### A. Proposed Settlement

To secure preliminary approval, the parties must show "that the court will likely be able to . . . approve the [settlement] proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). Approval under Rule 23(e)(2) in turn requires that the settlement be "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate[;] . . . and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The Court preliminarily considers each of these factors here.[3]

### 1. Adequate Representation

Historically, "'adequacy' for Rule 23(e)(2) settlement approval purposes . . . addresse[d] whether a <u>settlement</u> is good enough," leaving the adequacy requirement found in Rule 23(a)(4) to "address[] whether the <u>class representatives</u> will do a good enough job." <u>Allen Trust</u>, 28 F.4th at 526 n.7. As amended,

---

[3] The Fourth Circuit developed its own "multifactor standards" – the so-called <u>Jiffy Lube</u> factors - <u>before</u> the 2018 amendment of Rule 23(e)(2), which "specif[ied] factors for assessing the 'fairness, reasonableness, and adequacy' of a class-action settlement." <u>Lumber Liquidators</u>, 952 F.3d at 484 & n.8 (citing <u>Jiffy Lube</u>, 927 F.2d at 159). Although this Court must "apply [Rule 23(e)(2)] in the manner in which it is written," <u>United States v. Carey</u>, 120 F.3d 509, 512 (4th Cir. 1997), pre-amendment precedent remains relevant because the <u>Jiffy Lube</u> factors "almost completely overlap with the new Rule 23(e)(2) factors." <u>Lumber Liquidators</u>, 952 F.3d at 484 n.8.

however, Rule 23(e)(2) itself now asks whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

Here, Plaintiff's "claims arise from the same alleged misconduct as the remainder of the Class": Plaintiff, like the rest of the proposed settlement class, allegedly suffered harm from the "artificial deflation in the price of Wheeler common stock." ECF No. 93, at 32. Plaintiff's interests are thus aligned with those of the putative class. Counsel represents that "Plaintiff has been intimately involved in the conduct of the litigation" in furtherance of those interests, from the development of the initial complaint through discovery, deposition, and settlement negotiation. Id. at 18.

Plaintiff also retained competent counsel who have capably advocated before this Court. Other jurists have formed similarly favorable impressions of Plaintiff's counsel's firm. See ECF No. 94-2, at 3; ECF No. 94-3, at 4. Therefore, the Court concludes that Plaintiff and Plaintiff's counsel have provided more-than-adequate representation to the putative class, favoring preliminary approval.

### 2. Arm's Length Negotiation

Rule 23(e)(2) next asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Fourth Circuit's Jiffy Lube "fairness analysis" similarly focuses on

8

whether the proposed settlement "is reached as a result of good-faith bargaining at arm's length, without collusion." <u>Allen Trust</u>, 28 F.4th at 525 (citation omitted).

Both "the posture of the case at the time settlement was proposed" and "the extent of discovery that had been conducted" suggest an arm's length, non-collusive negotiation in this case. <u>Id.</u>  After part of Plaintiff's complaint survived vigorously contested motions to dismiss, the parties "developed an advanced factual record consisting of eighteen fact witness depositions and over 30,000 documents (spanning over 185,000 pages)." ECF No. 93, at 9.  They also "exchanged seven expert reports." <u>Id.</u>  "These adversarial encounters," which surely demanded significant time and expense, "dispel any apprehension of collusion between the parties." <u>In re NeuStar, Inc. Sec. Litig.</u>, No. 1:14cv885, 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015).

The "circumstances surrounding the negotiations" further suggest they were conducted at arm's length, especially given the experience of Plaintiff's counsel in litigating securities class actions. <u>Allen Trust</u>, 28 F.4th at 525-26 (citation omitted).  Only after exchanging "multiple rounds of offers and demands" and submitting "detailed memoranda regarding settlement to Magistrate Judge Miller" did the parties reach the proposed settlement agreement.  ECF No. 93, at 21; <u>cf.</u> <u>NeuStar</u>, 2015 WL 5674798, at *11.  There is simply no indication of collusion in the record.

9

Accordingly, the absence of evidence of collusion supports preliminary approval of the proposed settlement.

### 3. Adequate Relief

The Court next considers whether "the relief provided for the class is adequate," Fed. R. Civ. P. 23(e)(2)(C), that is, "whether a settlement is good enough to justify extinguishing the claims of absent individual class members." Allen Trust, 28 F.4th at 526 n.7. Myriad relevant factors point toward preliminary approval.

Plaintiff and the putative class would incur a "considerable potential cost" and risk if this litigation were to continue, whereas the proposed settlement promises concrete benefits on an abbreviated and relatively predictable timescale. Lumber Liquidators, 952 F.3d at 485 (citation omitted). The expected "costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), are substantial, as are the remaining pre-trial obstacles. For example, this Court has not yet ruled on Plaintiff's pre-settlement class certification motion, nor has the often formidable hurdle of summary judgment been overcome.

The demanded jury trial would require the putative class to expend even more resources to prepare and put on its case. At the preliminary approval hearing, Plaintiff's counsel allowed that extensive discovery had yet to yield any "smoking gun" evidence. Absent a settlement, the putative class would have to rely on inferences to prove Defendants' liability at trial, including to

10

make the factual showings required to rebut Maryland's director-friendly statutory presumption (the "business judgment rule") and overcome an exculpatory provision in Wheeler's charter.  See ECF No. 40, at 53-62 (declining to resolve these issues at the motion-to-dismiss stage).  That the plaintiff class would endure such "difficulties of proof" while Defendants enjoy relatively "strong defenses" favors finding the proposed settlement adequate.  Jiffy Lube, 927 F.2d at 159.

Further risk to the putative class arises from potential limits on Defendants' "ability to satisfy [a] litigated judgment[.]"  Lumber Liquidators, 952 F.3d at 485.  The parties explain that "Wheeler is a cash-strapped company" and express doubts that any "judgment substantially beyond the Settlement Amount and the [liability insurance] policy limits" would be recoverable.  ECF No. 93, at 24-25.  Approving the settlement would "avoid[] protracted litigation costs and risks to the settlement class and provide[] them with immediate recovery."  Allen Trust, 28 F.4th at 526 (citation omitted).

Rule 23(e)(2)(C) points to three additional factors for the Court to consider, each of which is either neutral or favorable to a finding of adequacy.  First, the parties propose a likely effective method of "distributing relief to the class."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  An estimated 95% of potential members of the putative class would receive notice, whether by individual

11

direct mail or national newswire.    ECF No. 93, at 25.    Once apprised, class claimants would bear a not insignificant initial burden to identify their relevant stock purchases and holdings. See ECF No. 94-1, at 20-22.    But these proof-of-claim requirements are aligned with the interests of the class itself in the efficient and equitable administration and disbursement of the settlement, thus somewhat counterbalancing such burden.

Next, the maximum "proposed award of attorney's fees, including timing of payment," Fed. R. Civ. P. 23(e)(2)(C)(iii), is comparable to awards upheld in other cases and does not negate the adequacy of the settlement as proposed.[4]    See, e.g., In re Genworth Fin. Sec. Litig., 210 F. Supp. 3d 837, 845 & n.4 (E.D. Va. 2016) (noting cases awarding "attorneys' fees varying from 25% to 33.3% of the total Settlement amount").

Finally, courts consider "any agreement required to be identified under Rule 23(e)(3)."    Fed. R. Civ. P. 23(e)(2)(C)(iv). The parties have disclosed just one: a "Supplemental Agreement" that would afford Defendants "the right to terminate the Settlement" if a critical mass of would-be class members elect exclusion.    ECF No. 93, at 27; ECF No. 94-1, at 28.    Termination under such a provision would necessarily imply the existence of

---

[4] "Plaintiff's Counsel intends to seek an award of attorneys' fees not in excess of 28% of the Settlement Amount, and expenses not to exceed $665,000, plus interest on these amounts at the same rate as earned by the Settlement Fund," to be paid "after the Court executes the Judgment and grants the Fee and Expense Application."    ECF No. 93, at 26-27.

substantial "opposition to the settlement," which would in turn weigh against adequacy. See Allen Trust, 28 F.4th at 526 (citation omitted). But at this preliminary stage, the agreement's mere existence does not alter this Court's analysis. Cf. Ciarciello v. Bioventus Inc., 744 F. Supp. 3d 447, 448 (M.D.N.C. 2024) ("[T]he confidential agreement establishing the conditions under which Defendants may terminate the Settlement is standard and has no negative impact on the fairness of the Settlement").

### 4. Equitable Treatment

The Court concludes its preliminary review of the settlement proposal by considering whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Pursuant to the proposed settlement, "Authorized Claimants will receive their pro rata shares of the Net Settlement Fund based on their recognized losses, as determined by the amount and timing of their purchases and sales of Wheeler common stock." ECF No. 93, at 28. This mechanical arrangement easily clears the equitable-treatment bar. See, e.g., In re MicroStrategy, Inc. Sec. Litig., 148 F. Supp. 2d 654, 660, 668-69 (E.D. Va. 2001) (approving plan of allocation premised on pro rata distribution).

In addition, "[s]hould the Court grant a service award to the class representative[]," - here, Plaintiff intends to request up to $50,000, ECF No. 93, at 27 - such an award would be "fair," "reasonable," and consistent with the equitable treatment of all

other class members.  See In re Peanut Farmers Antitrust Litig., No. 2:19cv463, 2021 WL 3174247, at *4 (E.D. Va. July 27, 2021).

\* \* \*

In summary, the parties have sufficiently demonstrated that "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B).  The Court now considers whether it may "certify the class for purposes of judgment on the proposal."  Id.

### B. Class Certification

Rule 23(a) establishes four "prerequisites" to class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  Fed. R. Civ. P. 23(a); Allen Trust, 28 F.4th at 521.  These four prerequisites require that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  In re Zetia (Ezetimibe) Antitrust Litig., 7 F.4th 227, 233-34 (4th Cir. 2021) (citing Fed. R. Civ. P. 23(a)).[5]

---

[5] The Fourth Circuit has "also noted that, apart from the enumerated requirements, 'Rule 23 contains an implicit threshold requirement that the members of a proposed class be "readily identifiable,"'" or "ascertainab[le]," by some "objective criteria." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 654-55 (4th Cir. 2019) (citations omitted).  The proposed class crosses this threshold; "objective data about who bought and sold [Wheeler] stock during the class period provides an administratively

Additionally, a proposed class may only be certified if the action qualifies as one of the three "types" of class actions enumerated in Rule 23(b). The parties here invoke Rule 23(b)(3), see ECF No. 93, at 33, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3).[6]

Where Rule 23(b)(3) applies, the Rule 23(a)(2) commonality requirement "is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement" of predominance. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 609 (1997). Accordingly, the Court begins with Rule 23(b)(3).

### 1. Rule 23(b)(3)

#### a. Predominance

The first Rule 23(b)(3) requirement, predominance, "focuses not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the

---

feasible way to ascertain the class." In re Jeld-wen Holding, Inc. Sec. Litig., No. 3:20cv112, 2021 WL 1186326, at *9 (E.D. Va. Mar. 29, 2021).

[6] The Rule goes on to specify that "matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

litigation." EQT Prod. Co. v. Adair, 764 F.3d 347, 366 (4th Cir. 2014). Predominance may be found if "defendants' common conduct" so "bear[s] on the central issue in the litigation . . . that individual issues will not predominate." Id.

Here, the success of every potential class member's claim depends on, inter alia, "(i) whether the Individual Defendants breached their statutory duties to Wheeler stockholders" and "(ii) whether those alleged breaches of fiduciary duty caused injury to Class Members in the form of artificial deflation of their stock value." ECF No 93, at 30. Demonstrating by generalized proof that Defendants breached their fiduciary duties in a manner that would occasion liability under Maryland law "would certainly involve resolution of an issue central to the settlement class members' claims in one fell swoop." Allen Trust, 28 F.4th at 522 (citation omitted). A "failure of proof" of such a breach would likewise "end[] the litigation." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 468 (2013). Accordingly, the predominance requirement of Rule 23(b)(3) is satisfied. Cf. Amchem Prods., 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . securities fraud."); In re Boeing Co. Sec. Litig., No. 1:24cv151, 2025 WL 2428481, at *1 (E.D. Va. Mar. 7, 2025) (finding predominance where class members' "claims are based on the same alleged misstatements and omissions by

defendants, as well as the same sort of monetary damages resulting from a decline in . . . stock price" (citation omitted)).

### b. Superiority

Rule 23(b)(3)'s superiority requirement is also satisfied. Critically, for class members with relatively small common stockholdings, "collective action may offer the only realistic opportunity to recover." EQT Prod. Co., 764 F.3d at 371; cf. Amchem Prods., 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (citation omitted)). That no other related litigation is ongoing, see ECF No. 93, at 34, suggests "individual members of the class" have little interest "in controlling their own litigations." Amchem Prods., 521 U.S. at 616 (citation omitted); Fed. R. Civ. P. 23(b)(3)(A)-(B).

As the Court's prior order makes plain, see ECF No. 40, issues of state law dominate this case. See EQT Prod. Co., 764 F.3d at 371 (noting that "the dominance of state law issues" might "bear on the superiority analysis"); Fed. R. Civ. P. 23(b)(3)(C). However, that dominance does not here negate the "suitability" and "judicial economy" of resolving this diversity litigation "in a [single] federal forum." EQT Prod. Co., 764 F.3d at 371. Notably, the law of Virginia, where "a substantial part of the events or omissions giving rise to the claims" allegedly occurred and in

17

which Wheeler is headquartered, ECF No. 1 ¶ 12, "does not permit class actions." Adair v. EQT Prod. Co., 320 F.R.D. 379, 418 (W.D. Va. 2017) (weighing this in favor of class certification). Furthermore, the Court foresees little "difficult[y] in managing" this class action. Fed. R. Civ. P. 23(b)(3)(D).

In sum, "a class action is superior to other available methods for fairly and efficiently adjudicating th[is] controversy, as numerous courts have found when handling these types of securities actions," especially since "the action is brought in the district in which the corporate defendant is headquartered and class members have not separately brought substantial litigation concerning the controversy." Boeing, 2025 WL 2428481, at *1. The Court thus preliminarily finds both elements of Rule 23(b)(3) satisfied. The Court next considers the four elements of Rule 23(a).

### 2. Rule 23(a)

#### a. Numerosity

Numerosity cannot seriously be disputed. In the Fourth Circuit, "a class of 40 or more members" is presumptively numerous. Zetia, 7 F.4th at 234. Here the class apparently comprises no fewer than 300 members – the minimum number of unique shareholders that Wheeler must have had to be listed on the Nasdaq exchange. ECF No. 93, at 29. Such a "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

18

### b. Commonality and Typicality

The Rule 23(a) requirements of "commonality" and "typicality" "tend to merge," and are (as noted above) further subsumed under Rule 23(b)(3)'s predominance requirement. <u>Allen Trust</u>, 28 F.4th at 522-23 (citation omitted). Given the Court's foregoing predominance analysis, there is no need to "tarry for long." <u>Id.</u>

"Members of a proposed class in a securities case are especially likely to share common claims and defenses." <u>In re BearingPoint, Inc. Sec. Litig.</u>, 232 F.R.D. 534, 539 (E.D. Va. 2006). Because the same "defendants' acts and omissions are at the center of this case," the Court has no trouble finding "that there are a number of questions of both law and fact common to all members of the proposed class." <u>Id.</u>; Fed. R. Civ. P. 23(a)(2).

Similarly, Plaintiff's claims, brought in his capacity as a Wheeler common stockholder, "represent the essential claims of the proposed plaintiff class." <u>BearingPoint</u>, 232 F.R.D. at 539. Each class member would "allege[] the same conduct" and "the same breach of fiduciary duty by the same individuals." <u>Knight v. Lavine</u>, No. 1:12cv611, 2013 WL 427880, at *3 (E.D. Va. Feb. 4, 2013). The Court therefore considers Plaintiff's claims "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).

### c. Adequacy

Finally, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the

class they seek to represent." Amchem Prods., 521 U.S. at 625. As discussed already in the context of Rule 23(e)(2)(A), Plaintiff, as putative class representative, "possess[es] the same interest and suffer[s] the same injury" as the rest of the settlement class. Id. at 625-26 (citation omitted). Plaintiff's material support for the prosecution of this action suggests as much. See, e.g., Jeld-wen, 2021 WL 1186326, at *4 ("Indeed, [the representative parties] have vigorously and competently represented the interests of the proposed class members throughout this litigation."). As has also been noted, Plaintiff's lead counsel appears well qualified. See Allen Trust, 28 F.4th at 524 (noting that "class counsel's competence" is "necessary" for Rule 23(a)(4) adequacy). The Court believes that Plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

### C. Notice and Appointments

Having found it "likely," upon the parties' showing, that the Court will be able to "(i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal," the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The parties propose to mail notice directly to "all Class Members identified by Wheeler's transfer agent, as well as brokers and other nominees who held or purchased Wheeler common stock on

20

behalf of others, and who will be directed by the Claims Administrator to forward" notice "to the beneficial owners" or identify such owners to facilitate direct mailing to them. ECF No. 93, at 34-35. The parties further propose notice via publication "in the national edition of The Wall Street Journal and once over a national newswire service." Id. at 35.

As the parties argue, see id., similar methods of notice have previously been considered "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); see, e.g., Neustar, 2015 WL 5674798, at *12. In substance, too, this proposed notice incorporates all of the information which Rule 23 requires to be "clearly and concisely state[d]."[7] Accordingly, the Court finds the parties' proposed notice sufficient to satisfy the dictates of Rule 23, to "ensure[] due process for class members," and "to inform class members of the case and their rights." Neustar, 2015 WL 5674798, at *12 (citation omitted).

Having determined already that Plaintiff and Plaintiff's counsel will likely serve as adequate representatives of the class, the Court finds it appropriate to appoint Plaintiff as Class

---

[7] To wit, "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Representative and to appoint Plaintiff's counsel as Class Counsel. Fed. R. Civ. P. 23(a)(3)-(4), 23(g)(1).

Finally, the Court will grant the parties' request to appoint Verita Global, LLC, as the claims administrator. See, e.g., In re Philadelphia Inquirer Data Sec. Litig., No. 2:24cv2106, 2024 WL 4582881, at *6 (E.D. Pa. Oct. 25, 2024) ("Verita Global, LLC, [is] a nationally recognized claims administrator.").

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Joint Motion. ECF No. 92. An appropriate order shall issue.

The Clerk is **REQUESTED** to send a copy of this Memorandum Opinion to all counsel of record.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 25, 2025